UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SHARONDA L. JOHNSON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BOKF, NATIONAL ASSOCIATION,<br><br>Defendant. | COMPLAINT-- CLASS ACTION<br><br>CASE NO. 3:17-cv-663<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff, SHARONDA L. JOHNSON, on behalf of herself and all others similarly situated, sues defendant BOKF, NATIONAL ASSOCIATION, and alleges:

## INTRODUCTION

1) Plaintiff brings this national class action seeking redress for an illegal practice that BOKF, NATIONAL ASSOCIATION ("BOKF, N.A.") perpetrates on its checking account customers. Plaintiff asserts this action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated, for damages and other relief arising from BOKF's routine practice of wrongfully assessing its customers so-called "Extended Overdraft Charges," displayed on bank statements as "EXTENDED OVERDRAFT FEE."

2) As alleged below in detail, this purported "charge" is deducted from a customer's account *in addition to* an initial $34.50 overdraft fee if and when the customer's overdraft status remains in effect for a period of five consecutive business days. By assessing these additional fees BOKF is actually charging its customers interest for the use, forbearance, or detention of money. The amount

BOKF charges its customers far exceeds the permissible limit under the National Bank Act.

## PARTIES

3) Plaintiff Sharonda L. Johnson is a citizen and resident of the State of Texas, specifically Kaufman County, and has had a checking account with Bank of Texas — a division of BOKF, N.A. — in Texas, at all times material hereto.

4) Defendant BOKF, N.A. is a nationally-chartered bank with its headquarters and principal place of business in Tulsa, Oklahoma. BOKF, N.A. operates several regional banks across the United States, which it sometimes refers to as Divisions, including Bank of Texas, where Ms. Johnson is a customer. Bank of Texas and other BOKF, N.A.-owned banks operate according to uniform corporate polices and provide retail banking services to consumers, including Ms. Johnson and members of the putative class. These services include issuing debit cards for their customers to use in conjunction with their checking accounts. BOKF, N.A. operates banking centers, and thus conducts business, throughout the State of Texas.

## JURISDICTION

5) This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, because it arises under the laws of the United States, namely the National Bank Act, 12 U.S.C. § 1, *et seq.*, and regulations promulgated by the Office of the Comptroller of the Currency.

6) BOKF, N.A. regularly and systematically provides retail banking services throughout the State of Texas, including in this district, and provides retail banking services to its customers, including Plaintiff and members of the putative class, in eight states, including Arizona, Arkansas, Colorado, Kansas, Oklahoma, Missouri, New Mexico, and Texas. As such, it is subject to the jurisdiction of this Court and the mandate of the National Bank Act.

## VENUE

7) Venue is likewise proper in this district pursuant to 28 U.S.C. § 1391 because BOKF, N.A. is subject to personal jurisdiction in this Court and regularly conducts business within this district through its numerous branches. Additionally, a substantial part of the events giving rise to the claims asserted herein occurred and continue to occur in this district.

## OVERVIEW

8) The gist of the Extended Overdraft Fee is as follows: If Customer "A" were to overdraft his or her account by $500.00, the bank first charges an overdraft fee of $32.50 per transaction. However, if Customer "A" fails to replenish his or her account to bring the balance to a positive figure within 5 days, then the bank deducts yet another $6.50 from A's account for extending this credit.

9) Unlike an initial overdraft fee, the Extended Overdraft Fee is an *additional* charge to a customer for which the bank has provided nothing new. The charge is based solely on the alleged indebtedness to the bank remaining unpaid by the customer for a period of time.

10) Overdraft fees have become a substantial source of revenue for banks. More banks have begun to gouge customers by piling on fees that beget additional fees. Not only have the number of banks that charge these fees increased so too has the frequency with which these fees are assessed. Customers today have more options than ever for accessing their money: They can set up automatic, recurring payments through online banking and transfer money or make other payments from their mobile phone.

11) All of these advances have given bank customers new ways to access the money in their accounts making overdraft episodes and their attendant fees increasingly common. Recent reports from the federal Consumer Financial Protection Bureau ("CFPB"), for example, show that a broad investigation has

been launched regarding bank overdraft practices and procedures due to its concern that the growing cost of overdraft practices could place banking customers at unnecessary risk. In 2012 alone, banks took in approximately $32 billion in overdraft-related fees.

12) As a recent CFPB report reflects, "sustained negative balance" fees are becoming popular with banks and account for nearly 10% of total overdraft-related fees collected by banks which impose such charges. According to its latest report issued in July of 2014, once a bank charges its customer a sustained overdraft fee on day five, the negative balance is likely cured by the customer within just a few days, rather than weeks. As such, the bank's extension of credit to its overdrawn customer is typically very short-term. Moreover, most negative balances created by an overdraft are not high figures. Nearly two-thirds of transactions that cause overdrafts were for $50 or less. As these statistics highlight, a bank's exposure for carrying a customer's overdraft is ordinarily very small and limited. But rather than charging legally permissible interest until its customer cures the overdraft balance, BOKF, N.A. banks like Bank of Texas instead charge a purported Extended Overdraft Fee that in reality is interest at an illegal rate.

## EXTENDED OVERDRAFT FEE PRACTICE

13) The specific issue in this case is BOKF, N.A.'s practice of assessing Extended Overdraft Fee to its customers' accounts, including Plaintiff's account and the accounts of others similarly situated. Under this practice, as exhibited by Bank of Texas' practices, if the customer fails to repay the full amount of the overdraft within five (5) days, the bank charges an Extended Overdraft Fee of $6.50 per business day. Bank of Texas does not render any services to its customers in exchange for charging this extra fee aside from continuing to advance money to a customer's account in an amount to cover the overdraft.

14) Bank of Texas' written "Agreements and Disclosures" for its customers like Plaintiff discusses Extended Overdraft Charges on page 7 where it explains under "Processing Order, Returned Items, and Overdrafts":

> If multiple items have been presented against the Account and there are insufficient funds to pay all the items presented, we will charge a fee (Overdraft Fee or Returned Item Fee) with respect to each item paid or returned. If your balance continues to remain overdrawn for more than five Business Days, you will be subject to an Extended Overdraft Charge in the amount set in the Summary of Fees.

15) The written "Summary of Fees and Definitions" is a single-page document that lists the cost of the overdraft fees — $34.50 for the initial overdraft fee, and $6.50 per business day "charged after 5 consecutive business days of your account being overdrawn" — but provides no additional detail on either type of fee.

16) Under this provision Bank of Texas allows itself to charge a fee against any checking or money market account merely by virtue of the customer failing to pay the bank a specific sum of money (the amount of the overdraft and the Overdraft Fee(s)) for a period of five (5) days. There is nothing in Bank of Texas' written materials disclosing that this additional "fee" is in reality a charge of interest on extended credit.

17) In Ms. Johnson's case, her monthly bank statements for her "Bank of Texas Choice Checking" show that she went into "overdraft" status several times during 2016, and was subsequently charged the per diem Extended Overdraft Fee. For example, on July 5, 2016, Ms. Johnson purportedly overdrafted, was charged an overdraft fee, and remained in that status for sixteen days. On the fifth business day — July 12, 2016, Bank of Texas charged her an Extended Overdraft Fee of $6.50. Bank of Texas continued to charge Ms. Johnson $6.50 every day for eight

consecutive business days. During that period, Ms. Johnson's negative account balance fluctuated from $421.80 to $473.80.

18) In total, Bank of Texas charged Ms. Johnson $45.50 in Extended Overdraft Fees during this overdraft event, in addition to the initial overdraft fee it also assessed.

## CLASS ACTION ALLEGATIONS

19) Plaintiff brings this action on her own behalf and all others similarly situated pursuant to Fed. R. Civ. P. 23. The Class includes:

> All holders of a BOKF, N.A. checking and/or money market account who, within the two-year period preceding the filing of this lawsuit, were assessed one or more Extended Overdraft Fees.

20) Excluded from the class are BOKF, N.A., its subsidiaries and affiliates, its officers, directors and member of their immediate families and any entity in which defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

21) Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add Subclasses if necessary before this Court determines whether certification is appropriate.

22) This case is properly brought as a class action under Fed. R. Civ. P. 23(a) and (b)(3), and all requirements therein are met for the reasons set forth in the following paragraphs.

23) *Numerosity under Fed. R. Civ. P. 23(a)(1)*. The members of the Class are so numerous that separate joinder of each member is impracticable. Upon information and belief, and subject to class discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to BOKF, N.A.'s records.

BOKF, N.A. has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to plaintiff.

24) *Commonality under Fed. R. Civ. P. 23(a)(2)*. There are numerous questions of law and fact common to the Class relating to BOKF, N.A.'s usurious business practice at issue herein and those common questions predominate over any questions affecting only individual Class members. The common questions include, but are not limited to:

    a) Whether BOKF, N.A. charged interest to its customers under the guise of an "extended" overdraft fee in amounts that violate applicable usury laws;

    b) Whether BOKF, N.A. developed and engaged in an unlawful practice that mischaracterized or concealed the true usurious nature of the "extended" overdraft fee;

    c) Whether BOKF, N.A. charged its customer a "fee" that bears no relationship to the actual costs and risks of covering insufficient funds transactions; and

    d) Whether Plaintiff and other members of the Class have sustained damages as a result of BOKF, N.A.'s wrongful business practice described herein, and the proper measure of damages.

25) *Typicality under Fed. R. Civ. P. 23(a)(3)*. Plaintiff's claims are typical of the claims of the other Class members in that they arise out of the same wrongful business practice by BOKF, N.A., as described herein.

26) *Adequacy of Representation under Fed. R. Civ. P. 23(a)(4)*. Plaintiff is more than an adequate representative of the Class in that she has a BOKF, N.A. checking account and has suffered damages as a result of BOKF, N.A.'s usurious business practice. In addition:

a) Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

b) There is no hostility of interest between Plaintiff and the unnamed Class members;

c) They anticipate no difficulty in the management of this litigation as a class action; and

d) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

27) *Predominance under Fed. R. Civ. P. 23(b)(3)*. The questions of law and fact common to the Class as set forth in the "commonality" allegation above predominate over any individual issues. As such, the "commonality" allegations (paragraph 24 and subparts) are restated and incorporated herein by reference.

28) *Superiority under Fed. R. Civ. P. 23(b)(3).* A class action is superior to other available methods and highly desirable for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is very small relative to the complexity of the litigation and since the financial resources of BOKF, N.A. are enormous, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and BOKF, N.A.'s misconduct will proceed without remedy. In addition, even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or

contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

29) All conditions precedent to bringing this action have been satisfied and/or waived.

## VIOLATION OF NATIONAL BANK ACT
## (12 U.S.C. §§ 85, 86)

30) Plaintiff realleges and incorporates all allegations in paragraphs 1 through 29 as if set forth fully herein.

31) Interest, by definition, is compensation for the use or forbearance of money or as damages for its detention. That is exactly the nature of BOKF, N.A.'s Extended Overdraft Fee. Any such charges imposed on a customer for use or forbearance of money or as damages for its detention – no matter how labelled by BOKF, N.A. – are in fact interest and in this case usurious, as alleged below.

32) Claims for usury against a national bank such as BOKF, N.A. are governed exclusively by certain provisions in the National Bank Act – specifically, 12 U.S.C. §§ 85, 86. Under § 85, a national bank may charge interest on any loan or debt at the *greater* of two options. Option (1) is "the rate allowed by the laws of the State ... where the bank is located." And option (2) is "1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located."

33) Under option (1), a bank is "located" only in the state that is designated in its organization certificate. BOKF, N.A. is located in Oklahoma. Under Oklahoma law, the "legal rate of interest shall be six percent (6%) in the absence of any contract as to the rate of interest, and by contract the parties may agree to any rate as may be authorized by law. . . ." 15 Okl. St. Ann. §266.

34) Under option (2), the discount rate for the Federal Reserve Bank of Kansas City (which covers Oklahoma) was .75% for primary credit and 1.25% for secondary credit at all times material. As such, the maximum rate under option (2) would be 2.25%.

35) Since option (1) is greater than option (2), 6% would be the maximum interest rate that BOKF, N.A. could legally charge its customers pursuant to 12 U.S.C. § 85. By covering overdrafts, BOKF, N.A. has knowingly extended credit to Plaintiff and others similarly situated for use in their checking and/or money market accounts. Such extensions of credit are loans made without a specific loan agreement. In fact, 12 U.S.C. § 84 defines the term "loans and extensions of credit" as including any and all direct or indirect advances of funds to a person made on the basis of any obligation of that person to repay the funds. In addition, federal banking regulators in guidance issued to national banks on the subject of overdraft items have expressly stated, "When overdrafts are paid, credit is extended." Joint Guidance on Overdraft Protection Programs, 70 Fed. Reg. 9127, 9129 (Feb. 24, 2005).

36) Although BOKF, N.A. is only permitted to charge Plaintiff and others similarly situated a *maximum* of 6% interest on these loans and extensions of credit, absent a contractual provision agreeing to a higher rate of interest for these specific charges, BOKF, N.A. has knowingly charged and collected Extended Overdraft Charges from Plaintiff and others similarly situated that far exceeded this permissible rate.

37) Using the maximum amount of Ms. Johnson's overdraft during the relevant period ($473.80) and applying a 6% annual interest rate over sixteen days, the maximum amount that Bank of Texas was legally permitted to charge Plaintiff was only $1.25. Instead, Bank of Texas charged Ms. Johnson $45.50 for that

seventeen-day period in which she had a negative balance – which is *over 36 times the maximum legal amount*.

38) The Extended Overdraft Fees charged to Plaintiff and others similarly situated for such advances of money are egregiously high, usurious, and illegal.

39) By labeling the charge as a "fee," BOKF, N.A. cannot mask the true nature of what it is.

40) As a direct and proximate result of BOKF, N.A.'s statutory breaches, Plaintiff and those similarly situated have sustained damages.

41) The usurious transactions at issue all occurred less than 2 years prior to the date of this action.

42) Plaintiff and those similarly situated are entitled to recover twice the amount of the usurious interest they have paid under 12 U.S.C. § 86, which provides:

> In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, *twice the amount of interest thus paid from the association taking or receiving the same* . . .

(Emphasis added).

43) Plaintiff and those similarly situated hereby demand recovery of the amounts owed to them as a result of the violations asserted herein.

WHEREFORE, Plaintiff demands judgment against defendant BOKF, N.A. for themselves and the Class members as follows:

    (a) Certifying this matter as a class action pursuant to <u>Fed. R. Civ. P.</u> 23;

    (b) Designating Plaintiff as an appropriate Class representative;

    (c) Awarding Plaintiff and the Class damages (including twice the amount of the usurious interest paid), prejudgment interest from the date of

loss, and their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs; and

      (d)    Granting such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated: March 7, 2017          Respectfully submitted,

*/s/ Warren T. Burns*

WARREN T. BURNS
Tex. Bar No. 24053119
SPENCER M. COX
Tex. Bar. No. 24097540
**BURNS CHAREST LLP**
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
wburns@burnscharest.com
scox@burnscharest.com

JEFFREY KALIEL (CA 238293)
**TYCKO & ZAVAREEI LLP**
1828 L Street, NW, Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
*jkaliel@tzlegal.com*
*(pro hac vice to be filed)*

JEFFREY M. OSTROW
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
1 West Las Olas Blvd, Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
ostrow@kolawyers.com
*(pro hac vice to be filed)*

***Counsel for Plaintiff***