UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SHARONDA L. JOHNSON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BOKF, NATIONAL ASSOCIATION,<br><br>Defendant. | COMPLAINT-- CLASS ACTION<br><br>CASE NO. 3:17-cv-663<br><br><br>JURY TRIAL DEMANDED |

**AMENDED CLASS ACTION COMPLAINT**

Plaintiff, SHARONDA L. JOHNSON, on behalf of herself and all others similarly situated, sues defendant BOKF, NATIONAL ASSOCIATION, and alleges:

**INTRODUCTION**

1)    Plaintiff brings this national class action seeking redress for an illegal practice that BOKF, NATIONAL ASSOCIATION ("BOKF, N.A.") perpetrates on its checking account customers. Plaintiff asserts this action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated, for damages and other relief arising from BOKF's routine practice of wrongfully assessing its customers so-called "Extended Overdraft Charges," displayed on bank statements as "EXTENDED OVERDRAFT FEE."

2)    As alleged below in detail, this purported "charge" is deducted from a customer's account *in addition to* an initial $32.50 overdraft fee if and when the customer's overdraft status remains in effect for a period of five consecutive business days. By assessing these additional fees BOKF is actually charging its customers interest in the form of a flat late fee for the use, forbearance, or detention of money. The amount BOKF charges its customers far exceeds the

permissible limit under the National Bank Act's usury limit.

## PARTIES

3) Plaintiff Sharonda L. Johnson is a citizen and resident of the State of Texas, specifically Kaufman County, and has had a checking account with Bank of Texas — a division of BOKF, N.A. — in Texas, at all times material hereto.

4) Defendant BOKF, N.A. is a nationally-chartered bank with its headquarters and principal place of business in Tulsa, Oklahoma. BOKF, N.A. operates several regional banks across the United States, which it sometimes refers to as Divisions, including Bank of Texas, where Ms. Johnson is a customer. Bank of Texas and other BOKF, N.A.-owned banks operate according to uniform corporate polices and provide retail banking services to consumers, including Ms. Johnson and members of the putative class. These services include issuing debit cards for their customers to use in conjunction with their checking accounts. BOKF, N.A. operates banking centers, and thus conducts business, throughout the State of Texas.

## JURISDICTION

5) This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, because it arises under the laws of the United States, namely the National Bank Act, 12 U.S.C. § 1, *et seq.*, and regulations promulgated by the Office of the Comptroller of the Currency.

6) BOKF, N.A. regularly and systematically provides retail banking services throughout the State of Texas, including in this district, and provides retail banking services to its customers, including Plaintiff and members of the putative class, in eight states, including Arizona, Arkansas, Colorado, Kansas, Oklahoma, Missouri, New Mexico, and Texas. As such, it is subject to the jurisdiction of this Court and the mandate of the National Bank Act.

## VENUE

7) Venue is likewise proper in this district pursuant to 28 U.S.C. § 1391 because BOKF, N.A. is subject to personal jurisdiction in this Court and regularly conducts business within this district through its numerous branches. Additionally, a substantial part of the events giving rise to the claims asserted herein occurred and continue to occur in this district.

## OVERVIEW

8) The gist of the imposition and collection of the Extended Overdraft Fee is as follows: If Customer "A" were to overdraft his or her account by $500.00, the bank first charges an overdraft fee of $32.50 per item. However, if Customer "A" fails to replenish his or her account to bring the balance to a zero or positive figure within 5 days, then the bank assesses yet another $6.50 from A's account for extending this credit, repeating the charge every subsequent business day until the account balance is brought to zero or a positive figure.

9) Unlike an initial overdraft fee, the Extended Overdraft Fee is an *additional* charge to a customer for which the bank has provided nothing new in the way of an *additional* service. The charge is based solely on the alleged indebtedness to the bank remaining unpaid by the customer for a period of time, making it a default or late fee to compensate the bank without regard for the previously provided overdraft service.

10) Overdraft fees have become a substantial source of revenue for banks. More banks have begun to gouge customers by piling on fees that beget additional fees. Not only have the number of banks that charge these fees increased, so too has the frequency with which these fees are assessed. Customers today have more options than ever for accessing their money: They can set up automatic, recurring payments through online banking and transfer money or make other payments from their mobile phone.

11) All of these advances have given bank customers new ways to access the money in their accounts making overdraft episodes and their attendant fees increasingly common. Recent reports from the federal Consumer Financial Protection Bureau ("CFPB"), for example, show that a broad investigation has been launched regarding bank overdraft practices and procedures due to its concern that the growing cost of overdraft practices could place banking customers an unnecessary risk. In 2012 alone, banks took in approximately $32 billion in overdraft-related fees.

12) As a recent CFPB report reflects, "sustained negative balance" fees are becoming popular with banks and account for nearly 10% of total overdraft-related fees collected by banks which impose such charges. According to its report issued in July of 2014, once a bank charges its customer a sustained overdraft fee on day five, the negative balance is likely cured by the customer within just a few days, rather than weeks. As such, the bank's extension of credit to its overdrawn customer is typically very short-term. Moreover, most negative balances created by an overdraft are not high figures. Nearly two-thirds of transactions that cause overdrafts were for $50 or less. As these statistics highlight, a bank's exposure for carrying a customer's overdraft is ordinarily very small and limited. But rather than charging legally permissible interest until its customer cures the overdraft balance, BOKF, N.A. banks like Bank of Texas instead charge a purported Extended Overdraft Fee that in reality is interest at an illegal rate.

**EXTENDED OVERDRAFT FEE PRACTICE**

13) The specific issue in this case is BOKF, N.A.'s practice of assessing Extended Overdraft Fees to its customers' accounts, including Plaintiff's account and the accounts of others similarly situated. Under this practice, as exhibited by Bank of Texas' practices, if the customer fails to pay the full amount of the overdraft within five (5) days, the bank charges an Extended Overdraft Fee of $6.50 per business day.

14) Bank of Texas does not render any services to its customers in exchange for charging this extra fee. Bank of Texas charges the Extended Overdraft Fee because the overdraft persists with the accountholder failing to bring the account balance to zero or positive during the five business days following the overdraft. It is a flat per-day late fee that it continues to charge after the five-day period.

15) The Extended Overdraft Fee is not assessed to compensate Bank of Texas for any of its costs associated with the processing of the item(s) that were paid by the bank, and it is not reimbursing the bank for the overdraft service that was already provided and for which the accountholder was already assessed an expensive per item initial overdraft fee.

16) The Extended Overdraft Fee is interest because it is charged as a result of the accountholder's failure to cure the overdrawn balance.

17) The Extended Overdraft Fee is an excessive markup of the overdrawn account balance that is assessed after the service for which BOKF, N.A. is generously compensated has been completed.

18) BOKF, N.A. could charge a flat amount or rate of interest that does not exceed the National Bank Act's usury limit when the accountholder has not repaid the overdrawn balance within the time period BOKF, N.A. designated for payment of the amount it loans, but it knowingly chooses not to.

19) Notably, the overdrawn balance includes both the dollar amount of the item(s) that overdrew the account and the initial overdraft fee(s). As such, if the accountholder is only able to pay a portion of the negative balance by depositing funds sufficient to satisfy the overdrawn amount but not the initial overdraft fee(s), the Extended Overdraft Fee will be charged on the amount attributable to the initial overdraft fee(s).

20) The applicable written "Agreements and Disclosures" for BOKF, N.A. customers like Plaintiff discusses Extended Overdraft Charges on page 7, explaining under the heading "Processing Order, Returned Items, and Overdrafts":

> If an item is drawn on your Account and your Available Balance insufficient to pay the item, we may, in our discretion (1) refuse to pay the item, without giving you prior notice, and charge a Returned Item Fee at the rate set in the Summary of Fees, as amended from time to time, or (2) elect to pay the item, in which case we will charge the Overdraft Fee at the rate set in the Summary of Fees and deduct the amount of the overdraft and the Overdraft Fee from the next deposit. A copy of the Summary of Fees may be found on the bank's website or at your banking center location. The fact that we may, from time to time, pay an item that would overdraw the Account, does not obligate us to pay any such items.
>
> If multiple items have been presented against the Account and there are insufficient funds to pay all the items presented, we will charge a fee (Overdraft Fee or Returned Item Fee) with respect to each item paid or returned. If your balance continues to remain overdrawn for more than five Business Days, you will be subject to an Extended Overdraft Charge in the amount set in the Summary of Fees.
>
> . . . .
>
> You agree to pay any overdraft upon our oral or written demand. If you fail to do so, we may charge your Account for the amount of the overdraft and may close the Account without notifying you in advance of such action.

21) The written "Summary of Fees and Definitions" is a single-page document that lists the cost of the overdraft fees — $32.50 per item for the initial overdraft fee, and "$6.50 per business day charged after 5 consecutive business days of your account being overdrawn" — but provides no additional detail on either type of fee.

22) As alleged in paragraph 18 above, BOKF, N.A. has two options when an item has the potential to overdraw the account's available balance. It can refuse to pay the item, triggering a Returned Item Fee, or it can pay it, triggering an Overdraft Fee. The per item Returned Item Fee and per item Overdraft Fee are the same dollar amount, and each charge is assessed on the basis that there is a cost to BOKF, N.A. whether it returns the item or pays it.

23) Since the advancement of funds to pay an overdraft does not trigger any additional charge compared to when BOKF, N.A. refuses to pay the item, the initial overdraft fee is not intended to compensate BOKF, N.A. for the extension of credit. In contrast, since the Extended Overdraft Fee is assessed only when the account is overdrawn, BOKF, N.A. is charging the money in consideration of the time value of money. It is compensation for loaning money to the accountholder.

24) BOKF, N.A. charges a fee against any checking or money market account merely by virtue of the customer failing to pay the bank a specific sum of money (the amount of the overdraft and the overdraft fee(s)) for a period of 5 days. There is nothing disclosing that this additional "fee" is in reality a charge of interest on extended credit.

25) In Ms. Johnson's case, her monthly bank statements for her "Bank of Texas Choice Checking" show that she went into "overdraft" status several times during 2016, and was subsequently charged the per diem Extended Overdraft Fee. For example, on July 5, 2016, Ms. Johnson purportedly overdrafted, was charged an overdraft fee, and remained in that status for sixteen days. On the fifth business day — July 12, 2016, Bank of Texas charged her an Extended Overdraft Fee of $6.50. Bank of Texas continued to charge Ms. Johnson $6.50 every day for eight consecutive business days. During that period, Ms. Johnson's negative account balance fluctuated from $421.80 to $473.80.

26) In total, Ms. Johnson was charged $45.50 in Extended Overdraft Fees during this overdraft event, in addition to the initial overdraft fee it also assessed.

## CLASS ACTION ALLEGATIONS

27) Plaintiff brings this action on her own behalf and all others similarly situated pursuant to Fed. R. Civ. P. 23. The Class includes:

> All holders of a BOKF, N.A. checking and/or money market account who, within the two-year period preceding the filing of this lawsuit through the date of class certification, were assessed one or more Extended Overdraft Fees.

28) Excluded from the class are BOKF, N.A., its subsidiaries and affiliates, its officers, directors and member of their immediate families and any entity in which defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

29) Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add Subclasses if necessary before this Court determines whether certification is appropriate.

30) This case is properly brought as a class action under Fed. R. Civ. P. 23(a) and (b)(3), and all requirements therein are met for the reasons set forth in the following paragraphs.

31) *Numerosity under Fed. R. Civ. P. 23(a)(1)*. The members of the Class are so numerous that separate joinder of each member is impracticable. Upon information and belief, and subject to class discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to BOKF, N.A.'s records. BOKF, N.A. has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to plaintiff.

32) *Commonality under Fed. R. Civ. P. 23(a)(2)*. There are numerous questions of law and fact common to the Class relating to BOKF, N.A.'s usurious business practice at issue herein and those common questions predominate over any questions affecting only individual Class members. The common questions include, but are not limited to:

    a)    Whether BOKF, N.A. charged interest to its customers under the guise of an "extended" overdraft fee in amounts that violate applicable usury laws;

    b)    Whether BOKF, N.A. developed and engaged in an unlawful practice that mischaracterized or concealed the true usurious nature of the "extended" overdraft fee;

    c)    Whether BOKF, N.A. charged its customer a "fee" that bears no relationship to the actual costs and risks of covering insufficient funds transactions;

    d)    Whether the Extended Overdraft Fee is interest or a non-interest service charge; and

    e)    Whether Plaintiff and other members of the Class have sustained damages as a result of BOKF, N.A.'s wrongful business practice described herein, and the proper measure of damages.

33)    *Typicality under Fed. R. Civ. P. 23(a)(3).*  Plaintiff's claims are typical of the claims of the other Class members in that they arise out of the same wrongful business practice by BOKF, N.A., as described herein.

34)    *Adequacy of Representation under Fed. R. Civ. P. 23(a)(4).*  Plaintiff is more than an adequate representative of the Class in that she has a BOKF, N.A. checking account and has suffered damages as a result of BOKF, N.A.'s usurious business practice.  In addition:

    a)    Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

    b)    There is no hostility of interest between Plaintiff and the unnamed Class members;

  c)  They anticipate no difficulty in the management of this litigation as a class action; and

  d)  Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

35) *Predominance under Fed. R. Civ. P. 23(b)(3)*. The questions of law and fact common to the Class as set forth in the "commonality" allegation above predominate over any individual issues. As such, the "commonality" allegations (paragraph 24 and subparts) are restated and incorporated herein by reference.

36) *Superiority under Fed. R. Civ. P. 23(b)(3).* A class action is superior to other available methods and highly desirable for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is very small relative to the complexity of the litigation and since the financial resources of BOKF, N.A. are enormous, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and BOKF, N.A.'s misconduct will proceed without remedy. In addition, even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

37) All conditions precedent to bringing this action have been satisfied and/or waived.

## **VIOLATION OF NATIONAL BANK ACT**

## **(12 U.S.C. §§ 85, 86)**

38) Plaintiff realleges and incorporates all allegations in paragraphs 1 through 37 as if set forth fully herein.

39) Interest, by definition, is compensation for the use or forbearance of money or as damages for its detention. That is exactly the nature of BOKF, N.A.'s Extended Overdraft Fee. Any such charges imposed on a customer for use or forbearance of money or as damages for its detention – no matter how labelled by BOKF, N.A. – are in fact interest and in this case usurious, as alleged below.

40) Claims for usury against a national bank such as BOKF, N.A. are governed exclusively by certain provisions in the National Bank Act – specifically, 12 U.S.C. §§ 85, 86. Under § 85, which sets the usury limit, a national bank may charge interest on any loan or debt at the *greater* of two options. Option (1) is "the rate allowed by the laws of the State ... where the bank is located." And option (2) is "1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located."

41) Under option (1), a bank is "located" only in the state that is designated in its organization certificate. BOKF, N.A. is located in Oklahoma. Under Oklahoma law, the "legal rate of interest shall be six percent (6%) in the absence of any contract as to the rate of interest, and by contract the parties may agree to any rate as may be authorized by law. . . ." 15 Okl. St. Ann. §266.

42) Under option (2), the discount rate for the Federal Reserve Bank of Kansas City (which covers Oklahoma) was .75% for primary credit and 1.25% for secondary credit at all times

material. As such, the maximum rate under option (2) would be 2.25%.

43) Since option (1) is greater than option (2), 6% would be the maximum interest rate that BOKF, N.A. could legally charge its customers pursuant to § 85.

44) The Office of the Comptroller of Currency, which regulates national banks under the National Bank Act, promulgated a definition of interest pursuant to § 85, in 12 C.F.R. § 7.4001, which is the following:

> § 7.4001 Charging interest by national banks at rates permitted competing institutions; charging interest to corporate borrowers.
>
> (a) Definition. The term "interest" as used in 12 U.S.C. 85 includes *any payment compensating a creditor or prospective creditor for an extension of credit*, making available of a line of credit, *or any default or breach by a borrower of a condition upon which credit was extended*. *It includes*, among other things, the following fees connected with credit extension or availability: numerical periodic rates, *late fees*, creditor-imposed not sufficient funds (NSF) fees charged when a borrower tenders payment on a debt with a check drawn on insufficient funds, overlimit fees, annual fees, cash advance fees, and membership fees. It does not ordinarily include appraisal fees, premiums and commissions attributable to insurance guaranteeing repayment of any extension of credit, finders' fees, fees for document preparation or notarization, or fees incurred to obtain credit reports.

(Emphasis added.)

45) The Office of the Comptroller of Currency has never acted to exclude the Extended Overdraft Fee that BOKF, N.A. from the definition of "interest" for purposes of § 85. To the contrary, in 2001, it did not amend § 7.4001(a) to address this issue and exclude this charge. *See* 66 F.R. 34784, 34787 (2001).

46) BOKF, N.A.'s deposit account relationships with its accountholders are governed by the National Bank Act's usury prohibition.

47) As alleged above, the Extended Overdraft Fee is a late fee. It is a late fee because the accountholder is immediately obligated to pay BOKF, N.A. the overdrawn balance and initial overdraft fee(s), and failing to do so within the contractually designated 5-day period triggers the

assessment of the Extended Overdraft Fee. Charging it is contingent on the accountholder being late in depositing sufficient funds to bring the negative account balance to zero or positive.

48) Applying the language in § 7.4001, the Extended Overdraft Fee is a payment compensating BOKF, N.A. for an extension of credit, or for a default or breach by the accountholder of the condition of payment within five days of BOKF, N.A. extending credit to the accountholder to pay overdrafts.

49) By covering overdrafts, BOKF, N.A. has knowingly extended credit to Plaintiff and others similarly situated for use in their checking and/or money market accounts. Such extensions of credit are loans.

50) BOKF, N.A. records the dollar amounts of overdrafts on its general ledger as Overdraft Loans to comply with Generally Accepted Accounting Principles.

51) The FDIC also require national banks, including BOKF, N.A., to record the amount lent to its accountholders to pay overdrafts as loans pursuant to its authority granted under 12 U.S.C. §1817(a).

52) Additionally, 12 U.S.C. § 84 defines the term "loans and extensions of credit" as including any and all direct or indirect advances of funds to a person made on the basis of any obligation of that person to repay the funds. In addition, federal banking regulators in guidance issued to national banks on the subject of overdraft items have expressly stated, "When overdrafts are paid, credit is extended." Joint Guidance on Overdraft Protection Programs, 70 Fed. Reg. 9127, 9129 (Feb. 24, 2005).

53) Though BOKF, N.A. will claim its Extended Overdraft Fees are "non-interest charges or fees, including deposit account service charges" in accordance with 12 C.F.R. § 7.4002(a), (b), they are not such charges. BOKF, N.A. bears the burden in defense of this claim

of factually proving that it complied with § 7.4002 and that Extended Overdraft Fees are a "non-interest" charge or fee.

54) Pursuant to 12 C.F.R. § 7.4002(c): "Charges and fees that are 'interest' within the meaning of 12 U.S.C. 85 are governed by § 7.4001 and not by this section."

55) Default charges are interest under the National Bank Act, if the charge results from the default, which is the case with the Extended Overdraft Fee. That fee must be paid for the use of money over time at a rate of $6.50 for the first five days, and even worse $6.50 for each business day thereafter.

56) The initial overdraft fee is charged to compensate BOKF, N.A. for its service of covering an overdraft, thereby extending credit to Plaintiff and others similarly situated. In contrast, the Extended Overdraft Fee is assessed because of the failure to pay the amount loaned after the 5-day period for payment of the negative balance has expired resulting in a payment default on the credit BOKF, N.A. extended. This fact makes the $6.50 per business day Extended Overdraft Fee a usurious charge in consideration of the time value of money.

57) Although BOKF, N.A. is only permitted to charge Plaintiff and others similarly situated a *maximum* of 6% interest on these loans and extensions of credit, absent a contractual provision agreeing to a higher rate of interest for these specific charges, BOKF, N.A. has knowingly charged and collected Extended Overdraft Charges from Plaintiff and others similarly situated that far exceeded this permissible rate.

58) Using the maximum amount of Ms. Johnson's overdraft during the relevant period ($473.80) and applying a 6% annual interest rate over sixteen days, the maximum amount that Bank of Texas was legally permitted to charge Plaintiff was only $1.25. Instead, Bank of Texas charged Ms. Johnson $45.50 for that seventeen-day period in which she had a negative balance –

which is *over 36 times* the maximum legal amount.

59) The Extended Overdraft Fees charged to Plaintiff and others similarly situated for such advances of money are egregiously high, usurious, and illegal.

60) By labeling the charge as a "fee," BOKF, N.A. cannot mask its true nature.

61) When BOKF, N.A. loans money to pay an overdraft, the typical creditor-debtor relationship governing a deposit account relationship is reversed. A credit transaction is created with BOKF, N.A. the creditor and the accountholder the debtor, the latter of which is obligated to pay the overdrawn balance.

62) That credit transaction controls the determination that credit has been extended under the National Bank Act, thereby controlling the amount of interest that BOKF, N.A. may charge because of the Act's usury limit. BOKF, N.A.'s $6.50 per day Extended Overdraft Fee exceeds the usury limit.

63) As a direct and proximate result of BOKF, N.A.'s statutory breaches, Plaintiff and those similarly situated have sustained damages.

64) The usurious transactions at issue all occurred less than 2 years prior to the date Plaintiff commenced this action and thereafter.

65) Plaintiff and those similarly situated are entitled to recover twice the amount of the usurious interest they have paid under 12 U.S.C. § 86, which provides:

> The taking, receiving, reserving, or charging a rate of interest greater than is allowed by section 85 of this title, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, *twice the amount of interest thus paid from the association taking or receiving the same . . .*

(Emphasis added).

66) Plaintiff and those similarly situated are entitled to recover the amounts owed to them as a result of the violations asserted herein.

WHEREFORE, Plaintiff demands judgment against defendant BOKF, N.A. for themselves and the Class members as follows:

(a) Certifying this matter as a class action pursuant to Fed. R. Civ. P. 23;

(b) Designating Plaintiff as an appropriate Class representative;

(c) Awarding Plaintiff and the Class damages (including twice the amount of the usurious interest paid), prejudgment interest from the date of loss, and their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs; and

(d) Granting such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated: December 15, 2017                                    Respectfully submitted,

*/s/ Jonathan M. Streisfeld*  
Jeff M. Ostrow (pro hac vice)  
Jonathan M. Streisfeld (pro hac vice)  
**KOPELOWITZ OSTROW**  
**FERGUSON WEISELBERG GILBERT**  
1 W Las Olas Blvd, Suite 500  
Fort Lauderdale, FL 33301  
Telephone: 954-525-4100  
Fax: 954-525-4300  
ostrow@kolawyers.com  
streisfeld@kolawyers.com  

Hassan A. Zavareei (pro hac vice to be filed)  
Anna C. Haac (pro hac vice to be filed)  
**TYCKO & ZAVAREEI LLP**  
1828 L St NW Suite 1000  
Washington, DC 20036  
Telephone: (202) 973-0900  
jkaliel@tzlegal.com  

Warren T. Burns  
Spencer M. Cox  
**BURNS CHAREST LLP**  
900 Jackson Street, Suite 500  
Dallas, TX 75202  
Telephone: (469) 904-4550  
Fax: (469) 444-5002  
wburns@burnscharest.com  
scox@burnscharest.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served on this day, December 15, 2017, via the Court's CM/ECF system to all counsel of record as indicated below:

| | |
|---|---|
| John Daniel Clayman<br>J Michael Medina<br>Sarah Wishard Poston<br>**FREDERIC DORWARD LAWYERS**<br>124 E Fourth St Tulsa, OK 74103<br>Telephone: (918) 583-9965<br>Fax: (918) 584-2729<br>jclayman@fdlaw.com<br>mmedina@fdlaw.com<br>sposton@fdlaw.com | Brett Field<br>**STROMBERG STOCK**<br>8750 N Central Expressway, Suite 625<br>Dallas, TX 75231<br>Telephone: (972) 458-5316<br>Fax: (972) 861-5339<br>brett@strombergstock.com |

*/s/ Jonathan M. Streisfeld*
Jonathan M. Streisfeld
***Counsel for Plaintiff***