# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHARONDA L. JOHNSON, on behalf of herself and all others similarly situated | § § § § § | |
| v. | § | CIVIL ACTION NO. 3:17-CV-0663-S |
| BOKF, NATIONAL ASSOCIATION | § § § § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses the Renewed Motion to Dismiss filed by Defendant BOKF, National Association ("BOKF") [ECF No. 37]. For the following reasons, the Court grants the Motion.

### I. BACKGROUND

Pursuant to Special Order 3-318, this case was transferred from the docket of Judge Jane J. Boyle to the docket of this Court on March 8, 2018.

This case arises out of allegations that the extended overdraft fees charged by BOKF are interest charges and that the rate of interest charged by BOKF is usurious under the National Banking Act ("NBA"). Plaintiff Sharonda Johnson has a checking account with Bank of Texas, which is a division of BOKF. Am. Compl. ¶ 3. That account is governed by written Agreements and Disclosures (the "Agreement"), which provide, in relevant part:

> If an item is drawn on your Account and your Available Balance insufficient to pay the item, we may, in our discretion (1) refuse to pay the item, without giving you prior notice, and charge a Returned Item Fee at the rate set in the Summary of Fees, as amended from time to time, or (2) elect to pay the item, in which case we will charge the Overdraft Fee at the rate set in the Summary of Fees and deduct the amount of the overdraft and the Overdraft Fee from the next deposit. A copy of the Summary of Fees may be found on the bank's website or at your banking center location. The fact that we may, from time to time, pay an item that would overdraw the Account, does not obligate us to pay any such items.

> If multiple items have been presented against the Account and there are insufficient funds to pay all the items presented, we will charge a fee (Overdraft Fee or Returned Item Fee) with respect to each item paid or returned. If your balance continues to remain overdrawn for more than five Business Days, you will be subject to an Extended Overdraft Charge in the amount set in the Summary of Fees.
>
> . . .
>
> You agree to pay any overdraft upon our oral or written demand. If you fail to do so, we may charge your Account for the amount of the overdraft and may close the Account without notifying you in advance of such action.

*Id.* ¶ 20.

Johnson was charged overdraft fees several times during 2016. *Id.* ¶ 25. For instance, on July 5, 2016, Johnson overdrafted and was charged an initial overdraft fee of $32.50. *Id.* She failed to remedy the overdraft over the course of the next 16 days. *Id.* On the fifth business day after the initial overdraft, Bank of Texas charged Johnson an Extended Overdraft Fee of $6.50 pursuant to the Agreement. *Id.* Bank of Texas then charged Johnson the same $6.50 fee every day for eight business days until she cured the overdraft. *Id.* Johnson's account was overdrawn by as much as $473.80 during this period. *Id.*

Johnson filed this putative class action, alleging that BOKF's Extended Overdraft Fee is actually "interest in the form of a flat late fee for the use, forbearance, or detention of money." *Id.* ¶ 2. Thus, she concludes, the fee should be treated as interest, and the rate of interest far exceeds the NBA's usury limit. *Id.* Johnson does not challenge the initial overdraft fee. *Id.* ¶ 13.

BOKF moved to dismiss Johnson's original complaint on April 6, 2017. Judge Boyle heard oral argument on that motion on October 24, 2017. That same day, the Court granted BOKF's motion but allowed Johnson to amend her complaint to cure the deficiencies identified at the hearing. The Court articulated these deficiencies as follows:

> [T]he way this has been pled, [Johnson hasn't] under . . . 12(b)(6) standards, articulated plausible facts in view of this Court's reliance upon what I think is the persuasive balance of the case authority . . . because I don't see in these cases that I could adequately draw a distinction between extended overdraft fees and overdraft fees. They all seem to rest on this analysis that these flow from deposit accounts with [Non-Sufficient Funds], insufficient account charges. And I'm not convinced from the cases, even with the distinctions you are making in cases in different contexts, that this is enough of a distinction to say that [Johnson has] pled a claim.

Hr'g Tr. 43-44 [ECF No. 32]. Johnson filed an amended complaint on December 15, 2017, and BOKF again moved to dismiss.

## II. LEGAL STANDARD

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the

assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

### III. ANALYSIS

BOKF asserts that its Extended Overdraft Fees are not interest under the NBA. In support of its position, BOKF cites a litany of district court cases from around the country that stand for the proposition that extended overdraft fees are not interest. *See, e.g., Moore v. MB Fin. Bank, N.A.*, 280 F. Supp. 3d 1069 (N.D. Ill. 2017); *In re TD Bank, N.A. Debit Card Overdraft Fee Litig. (TD Bank I)*, 150 F. Supp. 3d 593 (D.S.C. 2015); *Shaw v. BOKF, N.A.*, No. 15-CV-0173-CVE-FHM, 2015 WL 6142903 (N.D. Okla. Oct. 19, 2015); *McGee v. Bank of Am., N.A.*, Case No. 15-60480-CIV-COHN/SELTZER, 2015 WL 4594582 (S.D. Fla. July 30, 2015), *aff'd*, 674 F. App'x 958 (11th Cir. 2017). As Judge Boyle warned at oral argument, Johnson faces an "extreme uphill battle" in overcoming the persuasive authority that is contrary to her position. Hr'g Tr. 44.

In an attempt to win this uphill battle, Johnson advances several arguments in support of the proposition that, in this case, the extended overdraft fees are actually interest. Many of these arguments were considered and rejected by Judge Boyle in ruling on the prior motion to dismiss and by district courts around the country in the opinions listed above. Thus, Johnson was on notice that these arguments are ineffective, and this Court will address them only briefly.

First, Johnson contends that, pursuant to an Office of the Comptroller of the Currency ("OCC") regulation, the definition of "interest" is broad enough to encompass extended overdraft fees. *See* 12 C.F.R. § 7.4001(a). "The OCC is entitled to substantial deference regarding interpretation of its regulations under the NBA." *McGee*, 2015 WL 4594582, at *2 (citing *Smiley v. CitiBank, N.A.*, 517 U.S. 735, 739 (1996)). Johnson's argument regarding the definition of "interest" has been considered and rejected by multiple courts, and this Court joins them in declining to interpret the term "interest" to include extended overdraft fees. *See, e.g., id.* at *3; *Moore*, 280 F. Supp. 3d at 1072.

Second, Johnson asserts that when BOKF covers an overdraft, it extends credit to the accountholder. Thus, she argues, the bank becomes a creditor, "[t]he resulting loan is governed by the NBA, and any fees assessed for nonpayment of that loan are subject to [the NBA's] usury limits." Pl.'s Br. 6. To support this contention, Johnson relies on several sources, including Joint Guidance,[1] OCC enforcement actions, Regulation O,[2] case law from other contexts, and banking treatises. Judge Boyle considered these sources and ultimately found them unpersuasive in light of the case law cited by BOKF. *See* Hr'g Tr. 46 ("I am relying on these cases that I think are persuasive, and I don't see anything to the contrary that persuades me otherwise."). Additionally, these sources have been rejected as unpersuasive or inapplicable by other federal district courts ruling on the precise issue of whether extended overdraft fees constitute interest.[3] *See, e.g., TD Bank I*, 150 F. Supp. 3d at 643 (finding arguments premised on Regulation O, Joint Guidance,

---

[1] Joint Guidance on Overdraft Protection Programs, 70 Fed. Reg. 9127 (Feb. 24, 2005).
[2] 12 C.F.R. § 215.3(a)(2).
[3] For the same reasons, the Court rejects Johnson's argument that 12 C.F.R. § 32.2 supports her position. Like Regulation O, this regulation was drafted for an entirely different purpose—to prevent excessive loans and to promote diversification of loans. *See* 12 C.F.R. § 32.1(b).

OCC enforcement actions, court decisions in other contexts, and banking treatises unpersuasive). Indeed, the crux of Johnson's argument, that a bank becomes a creditor when it covers an overdraft, was again rejected by a federal district court just months ago. *See In re TD Bank, N.A. Debit Card Overdraft Fee Litig. (TD Bank II)*, Civ. A. No. 6:15-MN-2613-BHH, 2018 WL 1101360, at *7 (D.S.C. Feb. 28, 2018) (rejecting plaintiff's argument that overdraft fee context is "an exception to the general rule that the depositor is the creditor and the bank is the debtor.").

Johnson cites one novel source—BOKF's internal documents—in support of an argument that has otherwise been soundly rejected by almost every court to consider it. Johnson notes that BOKF records the amount of overdrafts on its general ledger as "Overdraft Loans" in accordance with Generally Accepted Accounting Principles ("GAAP"). Pl.'s Br. 12. Thus, Johnson asserts, "BOKF itself recognizes that it extends credit to accountholders when it pays overdrafts[, and] [t]hat extension of credit appropriately triggers consideration of whether the Extended Overdraft Fee is usurious under § 85." *Id.* at 14. "Because covering an overdraft is an extension of credit," Johnson concludes, "it follows that the Extended Overdraft Fee is interest." *Id.* at 15.

The Court disagrees. Under Johnson's reasoning, both initial and extended overdraft fees would constitute interest, because BOKF records all overdrafts as loans. However, Johnson has conceded that initial overdraft fees are not interest. *See* Hr'g Tr. 15, 33. Johnson attempts to overcome this obstacle by arguing that initial and extended overdraft fees are distinguishable based on their purpose, timing, and method of assessment. This argument has been considered and rejected by prior courts. *See, e.g., TD Bank II*, 2018 WL 1101360, at *7 ("[D]espite the length, breadth, and diversity of these sources . . . not a single one suggests that sustained overdraft fees are interest charges distinct from overdraft fees generally."); *Shaw*, 2015 WL 6142903, at *4 ("The arguments advanced by plaintiff have been consistently rejected by federal district courts, and this

Court does not find plaintiff's arguments any more persuasive because they are advanced in connection to extended overdraft fees, as opposed to initial overdraft fees."). The *Shaw* ruling is especially noteworthy because it, like the instant case, involved BOKF and BOKF's extended overdraft fee system.

Further, GAAP is not a legal code. *See Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 100 (1995) ("GAAP 'encompasses the conventions, rules, and procedures that define accepted accounting practice at a particular point in time.' GAAP changes and, even at any one point is often indeterminate." (quoting R. KAY & D. SEARFOSS, HANDBOOK OF ACCOUNTING AND AUDITING, ch. 5, p. 7 (2d ed. 1989))); *Delorean v. First Horizon Home Loans*, Civ. No. 10-3021-CL, 2011 WL 4404148, at *2 (D. Or. June 7, 2011), *adopted by* 2011 WL 4404143 (finding that accounting principles "have no independent legal force on their own."). Finally, even if the Court were to consider BOKF's accounting treatments of its overdrafts, it would also have to consider the fact that BOKF records extended overdraft fees as fees, not interest, in several contexts, including on its general ledger. Def.'s Reply 5. For these reasons, the Court agrees with BOKF that the accounting treatment BOKF accords its overdrafts is insufficient to overcome the legal treatment accorded to extended overdrafts by the majority of federal district courts that have considered the issue.

"Because covering an overdraft is an extension of credit," Johnson posits, "it follows that the Extended Overdraft Fee is interest." Pl.'s Br. 15. For the reasons discussed above, the first part of Johnson's argument fails, so the Court need not reach the second. However, the Court notes that courts have consistently rejected this argument as well. *See, e.g., TD Bank I*, 150 F. Supp. 3d at 643 ("[P]laintiffs were not charged interest for the use of money, but were charged fees for overdrawing their accounts and for failing to remedy the status of those overdrafts within

the contractually allotted time period."); *Shaw*, 2015 WL 6142903, at *4 ("[Plaintiff] was not charged an interest rate for the use of money, but she was charged fees for causing her account to become overdrafted and for failing to remedy [the] status of her account as overdrafted within five business days.").

Finally, the Court will address Johnson's argument that "BOKF cannot point to persuasive authority supporting its proposition." Pl.'s Br. 18. Johnson criticizes BOKF's reliance on several OCC sources, including its 2001 amendment to its rules regarding banking activities and operations,[4] Interpretive Letter 1082,[5] and overdraft opt-in form.[6] However, prior courts have endorsed two of these sources in determining that extended overdraft fees are not interest, and BOKF appears to have abandoned its reliance on the third. *See, e.g.*, *TD Bank I*, 150 F. Supp. 3d at 641 (2001 amendment); *Moore*, 280 F. Supp. 3d at 1071 (Interpretive Letter 1082). This Court concurs that such sources, created by the "most pertinent regulator, the OCC," constitute persuasive authority supporting BOKF's position. *TD Bank II*, 2018 WL 1101360, at *7.

Johnson attacks BOKF's reliance on the multitude of district court cases that deal with the precise issue before the Court. Johnson urges this Court to ignore the majority approach and "align[] itself with the well thought ruling in *Farrell*."[7] Pl.'s Br. 18. The *Farrell* ruling has been rejected by subsequent courts considering the issue and stands as the sole outlier to an otherwise uniform line of precedent. Like the Northern District of Illinois and the District of South Carolina, this Court declines to follow the *Farrell* ruling and instead "join[s] the majority of federal courts

---

[4] 66 Fed. Reg. 34784-01, 34786-87 (July 2, 2001).
[5] OCC Inter. Ltr. 1082 (May 17, 2007).
[6] *What You Need to Know about Overdrafts and Overdraft Fees*, FED. RESERVE, http://www.federalreserve.gov/newsevents/press/bcreg/bcreg20091112a3.pdf (last visited Sept. 12, 2018).
[7] *Farrell v. Bank of Am., N.A.*, 224 F. Supp. 3d 1016 (S.D. Cal. 2016).

that have considered this issue and find[s] that overdraft charges on a deposit account do not come within the OCC's definition of interest." *Moore*, 280 F. Supp. 3d at 1072; *see also TD Bank II*, 2018 WL 1101360, at *10 (listing reasons for declining to follow *Farrell*). Further, this argument was before Judge Boyle, and she declined the invitation to follow *Farrell*. *See* Hr'g Tr. 43-44. This Court shall not deviate from that ruling.

## IV. CONCLUSION

For the foregoing reasons, the Court grants the Motion and dismisses Plaintiff's claims with prejudice.

**SO ORDERED.**

SIGNED September 18, 2018.

_____
**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**